Good morning, Your Honors. May it please the Court. Paul Frasetto for Appellants. This is, of course, a legal malpractice case. There's two issues in the case. First, did the Bankruptcy Court have jurisdiction over the State law legal malpractice claim? And second, if so, did the Court properly grant the motion to dismiss? I'd like to talk about the jurisdiction first. The rule is that Bankruptcy Courts do not have jurisdiction over State law claims that do not affect the administration of a bankruptcy estate. And that is exactly this case. There is nothing that can happen in this legal malpractice case that will have any effect whatsoever on the bankruptcy or the administration of its estate. In this case, my clients invested in a mushroom farm. It got in trouble. It filed bankruptcy. My clients went to a lawyer, Mr. Chandler, and asked, can you help us? He said, yes. Here's how I'm going to help you. Go form a creditors' committee, the Bankruptcy Court will go to you. We know the facts. Okay. Do you have a killer case that supports the proposition that you just told us? Yes. That this can't possibly affect the bankruptcy? I read that as saying, in the future, therefore, it's too late, it's out, it's not a court proceeding, whatever. What's your best case? Sure. Well, there's two. One is the Third Circuit Court of Resorts International, a 2004 case, 372 F. 3rd, 154. That was an accountancy malpractice case. Right. Where accountants made mistakes, and a litigation trustee was unable to recover some of the money that it was to recover. And what that case held was that it certainly wasn't a court proceeding, because it didn't affect the administration of the case. And the resolution of that case against the accountancy accountant firm would have no effect whatsoever on the administration of the case. The more recent case that I think gives us a lot of guidance is the Supreme Court case of Gunn v. Minton, which came out in February. It's not briefed in our papers. Oops. It came out after our papers. Did you give us a 28-J letter? Yes, Your Honor. So it's in the record. Did you file a 28-J letter? I don't think so. Do you know what 28-J is? No, I don't, Your Honor. Well, you just said yes. Did you file a 28-J letter? Usually when there's new authorities, the lawyers are required under Rule 28-J to file a 28-J letter that pretty much says, hey, here's new authority. Your Honor, I did not. Did you do that in this case? See, it's bad form, because then the other side doesn't even know that you're going to talk about this. Maybe they spoke that out. I don't know. But the appropriate form is to file that 28-J letter. Well, Your Honor, the truth is I found out this case getting ready for oral argument this week, so I'm sorry. Well, you can give the citation to the court afterwards, okay? It's 133 Supreme Court, 1059, 81 U.S., 4085. And the name of it is Minton? Minton, Gunn v. Minton, G-U-N-N v. M-I-N-T-O-N. And that's a legal malpractice arising out of a patent infringement case. And, of course, that came under U.S. 20 U.S.C. 1338 and 1331. Bankruptcy comes under Section 1334. But the analysis is the same, because, you know, Federal jurisdiction exists over State law claims only if the Federal issues are necessary to the case and would have some impact on the balance between Federal courts and the State courts. And what's held in Minton I think applies here, is the court held that the backward looking nature of a legal malpractice claim, the question is posed in a merely hypothetical sense. If Minton's lawyers had raised a experimental use argument that's unique to patent law, would the result in the patent infringement proceeding have been different? No matter how the State courts resolve that hypothetical case within a case, it will not change the real-world result of the prior Federal patent litigation. Minton's patent will remain invalid. Now, if you change that to the bankruptcy Of course, it's a whole different statute. It is. But the logic is exactly the same. If this case went to trial in the bankruptcy court or actually in the district court, the only result would be a money judgment in favor of my clients against the defendant lawyer. The administration of the bankruptcy estate will not be impacted in any way whatsoever. And if there's no effect whatsoever on the bankruptcy estate, there's no Federal jurisdiction. And the best authority to that is the U.S. Supreme Court case of Solotex that is cited in our papers that says that bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor. So what's returned to the merits? To the motion to dismiss. The primary issue in the motion to dismiss is whether a duty was owed by this attorney to my clients. The bankruptcy court held no because the attorney was representing the creditor's committee, and that it's really helpful to have attorneys represent creditor's committee in bankruptcy court. I don't blame the bankruptcy court for wanting to have competent lawyers in its courtroom representing creditor's committee. But the law in California is that an attorney owes a duty to the intended beneficiaries of the attorney's legal services. Here, my clients and the other unsecured creditors were not only intended beneficiaries. They were the only beneficiaries of his services. I don't think I've seen a case in which the lawyer for the creditor's committee has been deemed to represent all of the unsecured creditors. There's some cases that say that in dicta. But the issue here is liability for legal malpractice. And I don't know of a legal malpractice claim by a creditor's committee against a lawyer. I haven't seen that. So I couldn't find authority on that. But this is a State law case. It's based on California law. And under California law, it's pretty clear that when a lawyer is hired to protect the interests of a certain group, that group or person has standing to sue for malpractice. Well, the problem with that in the bankruptcy context, at least as far as I'm concerned, is that the creditor's committee is considered an entity within the bankruptcy. It's separate from all the creditors. And the creditor's committee, I mean, obviously some of the creditors can be at odds with the creditor's committee. They often are. And so by the nature of bankruptcy, the attorney can't be representing all the creditors because they disagree with what the creditor's committee is doing. I mean, you have tons of cases where there's a creditor's committee that is in opposition to a particular creditor. So when you say the duty flows is for the benefit of all, it doesn't quite make sense to me in the bankruptcy context. So explain to me where I've gone wrong. Well, what is the lawyer's job? The lawyer's job in a case like this is to protect the interests of the unsecured creditors who are members of the creditor's committee. The creditor's committee has no stake in this case. It's not owed anything. It's just an entity created by the creditors. This is what the problem the bankruptcy judge had. He said the creditor's committee is a separate entity. If you're representing a particular creditor, that's one thing. But the committee has a different function in bankruptcy. And I think you basically conceded that point. It's a — it's a — it's an entity that's a — it's an artificial entity, if you will. But — I understood. But the question here is, is there a duty to unsecured creditors? I understand the different function the creditor's committee pays — plays. And there's nothing in that function — well, first of all, the creditor's committee no longer exists. Well, of course not. It was never authorized to bring a legal malpractice claim. And I don't think the statute authorizes that. But what we have here are four people who went to a lawyer, who got this lawyer, hired as attorney for their creditor's committee. He failed in his duties, and they're out money. Now, they have no source of recovery other than the lawyer who made the mistake. And I think under State law — Well, the lawyer who made the mistake was the debtor's attorney. Well, I'm not going to dispute that. No, I mean, there's no question about that. The lawyer who made the mistake was the debtor's attorney. Right. I understand. And what you're saying is that the attorney for the creditor's committee should have ensured that the papers were filing, and probably should. But it's a far stretch to get from that to an individual creditor in terms of duty. I mean, what was the scope of his employment with the creditor's committee that no longer exists? The scope of his duty was to protect the interests of the unsecured creditor. And when was the unsecured — when was the creditor's committee dissolved? Well, I don't think there was an official ruling, but as soon as a plan was implemented, it no longer existed. Sure. And the damage was done after the creditor's committee was dissolved, true? Well, the mistake was made while the creditor's committee existed. The consequences did occur until later. Yeah. Right. What this does, though, if creditors — and this is the problem I have. If the attorney for a creditor's committee has no duty to the unsecured creditors, you've got unsecured creditors with a lawyer representing their interests, and they have no recourse against that lawyer. The lawyer — it would be a special rule for lawyers who represent unsecured creditors that they can't be liable for their mistakes. Well, no. I don't think that's the rule. I think in terms of what duties are owed to the creditor's committee, there's certainly a legal duty. But I think the problem the district court had and the bankruptcy court in this case is that you're extending the duties to beyond the scope of employment. You know, under California State law, I think that's doing — What's your best case on that, that we have an intuitive — The best case on that is Starr v. Moosland. That's 14 Calap. 3rd. 988. And in that case, an attorney prepared escrow instructions, and certain deeds were to be recorded. He sent them off to the escrow company. They never recorded them. His defense was, I don't record these things. The escrow company does. And that's the defense here. The defendant is saying, I don't file the UCC-1 — UCC-1 financial statement. That was for the debtors of Trinity. I have no obligation to do that. But you've got to understand that that security instrument was to benefit nobody other than the unsecured creditors. The only ones who had any interest in that were the unsecured creditors. The debtor didn't care. The debtor's attorney didn't help the debtor by either recording it or not recording it. The debtor no longer exists. And it was against the interests of the buyer of the assets out of the bankruptcy. So the only one who had — only people who had any interest in that, the recordation of the financial statement, was the unsecured creditors. And in Starr v. Moosland, the defendant raised the defense that, well, it's not my job to do what the escrow company does. And the Court said — That's sort of a different theory than we have here. Well — That would be the theory on the defense if you got that far. Well, I think I thought what you were asking was, was the motion to dismiss Congress. No, I was asking for a case where the duty extended in this circumstance, too. As you say — Oh, sure. Un — Best case for extending duty is — Well, you can provide a rebuttal if you want. Yeah. It was an attorney for a collection agency. A creditor gave the debt to the collection agency. The attorney mishandled the collection of the debt. Even though he was the attorney for the collection agency, the creditor could recover, even though there was no privity. It was obvious that the attorney was there to protect the interests of the creditor, and the creditor had — was able to sue the lawyer because he was the intended beneficiary of the attorney's services. I think that's the same here. The unsecured creditors were the only intended beneficiaries. The only one who had any money at stake in this, they're the ones who lost. The creditors' committee didn't lose any money. It was the unsecured creditors. Well, no, but the duties — the duties are distinct in bankruptcy, because what an attorney does for the creditors' committee, he's looking at the plan. He's objecting to the plan. He's raising these types of issues. They have standing to do that. He's not necessarily arguing on a proof of claim or a recovery out of the bankruptcy estate. He's not hired to do that. Every creditor has the right to hire their own attorney on this. Well, then my client's left without a remedy.  Well, I think I'll save my time for rebuttal. If it please the Court, good morning. My name is James Murphy. I represent the defendants and appellees. I'll address the Gunn v. Mitten case in a second. I'm acutely aware of that case. Can you start where your colleague just left off? Is his client left without a remedy? I mean, it seems like if the individual members of the unsecured committee can't suit Mr. Chandler for professional malpractice, then how can the committee protect its rights? Because the committee, as reconstituted, would have an attorney-client relationship with Mr. Chandler and could pursue on behalf of the committee any claims of legal And then distribute to the members of the committee? I'm sorry? And then distribute whatever damages they were able to recover to the members of the committee? And to the bankruptcy court for the cost of administration. So I look at this case a little differently than Mr. Frusetto does. I think the issue here is whether an alleged malpractice claim arising out of a court-approved bankruptcy reorganization committed by a bankruptcy court-approved attorney representing an unsecured creditors' committee, a core proceeding such that a bankruptcy judge rather than an Article III judge can issue a final adjudicating order. And I think under the facts of this case, there's no question but that this is a core proceeding. It's a core proceeding because it is inextricably intertwined with the administration of the estate. I mean, it seems to me, I didn't discuss the cases with your opponent, but I mean, most circuits have held that if you have a post-petition proceeding involving a bankruptcy, an official of the bankruptcy court who's in the bankruptcy, that's a core proceeding. Now, his best argument, I think, is, well, look, this is post-bankruptcy. It doesn't involve distribution, per se, in the bankruptcy court. And it's a question of state common law in terms of how legal malpractice plays out. So. Well, let me address that question in the context of Gunn v. Mitten. Gunn v. Mitten was a case involving an underlying patent. And it was a legal malpractice case brought against some lawyers in Texas. There was a Ninth Circuit case called Landmark Screens v. Brobeck, Flager & Harrison that I was involved in at the trial court level. And the court there held that in the context of a legal malpractice case involving an underlying patent, exclusive jurisdiction resides in the Ninth Circuit case or Gunn v. Mitten? The Ninth Circuit case, which was Landmark Screens v. Brobeck, Flager & Harrison. And the court ruled there that in a case where there is exclusive Federal jurisdiction, in that particular situation, a patent law case, any actions relating to the patent, whether it be legal malpractice or whatever, exclusive jurisdiction resides in the Federal court. Gunn v. Mitten took up a case, the Supreme Court took up a case from Texas, and in that case said that unless the determination regarding the patent, whether the patent was valid or not or whether it was infringed or not, actually impacted patent law, then exclusive jurisdiction did not reside in Federal court. Here we have a different situation. Here we have a statutory scheme set up by Congress to aid debtors, the Bankruptcy Act. The jurisdiction in bankruptcy court, as Your Honor is well know, resides there and also in district court. It's not exclusive jurisdiction, but it resides in Federal court, either bankruptcy court or district court. Here, the administration of the estate, even though it may have involved damages that accrued after the bankruptcy was discharged, affect the administration of the estate, directly affect the administration of the estate, because the moneys to have been recovered as a result of this failed sale due to the buyer not completing the purchase, directly affected the administration, not just of these individual creditors, but the entire creditor community, of which these folks were only a few. In fact, not every one of the members of the creditors' committee is finally sued in this particular case. What counsel didn't advise the Court was that after this sale failed, the bankruptcy was reopened, and there was a new trustee appointed, things occurred thereafter, so we'd still have the administration of the estate that related to that failed sale. It is a core proceeding, and it's a core proceeding relating directly to the administration of the estate. The jurisdiction resides with the Bankruptcy Court to issue a final adjudication. It did. It was affirmed by the district court. And I submit, Your Honor, that the decision of the district court should be affirmed. And unless there are any additional questions, I will submit it. Thank you, Your Honor. Briefly, Your Honors, the fact that the bankruptcy was reopened, I think, helps my case. When the problem with the lack of security came to light, the trustee was notified. The case was reopened. The buyer of the assets out of the bankruptcy, Premier, owed a million dollars. It had over-encumbered itself. It didn't have the money. Bankruptcy was reopened. A settlement was reached with Premier where they paid some hundred-plus thousand dollars to resolve its remaining debt, and then that ended the bankruptcy. It closed. The only thing that was left was this malpractice case. And if this malpractice case went forward, it would result in a judgment against the defendant in favor of my clients. And that can't impact the bankruptcy in any way. So I just don't see how there's any bankruptcy jurisdiction over a case that isn't going to affect anybody. I didn't ask you this when you were first up, but how do you deal with all those cases that say when there's a claim, a postpetition claim against a bankruptcy officer, that that's a court proceeding? If you look at those cases, they're almost invariably a case by a trustee or a debtor. Well, they usually are, but not always. This is by an officer who's an officer of the court because he's appointed to be the attorney for the creditors. Well, that was the situation in Resorts International. You had the accountant firm for the liquidation trustee. Similar situation, you had a function of the bankruptcy court out there, a creation of the bankruptcy court, but it was a dispute between the liquidation trustee and the accountant firm. The resolution of that case would only bring money into the liquidation trust. Wouldn't it otherwise affect the bankruptcy? Actually, it would have some effect on the administration of the bankruptcy. And the court held that's a matter of State law. It doesn't impact the administration of the bankruptcy estate. Okay. Thank you, counsel. The case will be submitted for decision. Thank you both for your arguments.
judges: Trott, Thomas, Murguia